Case No. 22-5240 Kavoni Savage Appellant v. United States Department of Justice et al. Mr. Hicks for the appellant, Ms. Lilly for the appellees. Good morning. Whenever you're ready. Good morning, your honors. May it please the court. Kavoni Savage has exhausted his administrative remedies as required by law, and the district court's decision to grant summary judgment in this case should be reversed. As this court is aware, the Supreme Court in Ross v. Blake has stated that in order to determine whether a prisoner has exhausted their administrative remedies, that we should look to the, quote, facts on the ground, end quote, to determine whether there is an available avenue for exhausting administrative remedies. I would assert that the facts on the ground here, if the court examines them, will prove that Mr. Savage has exhausted his administrative remedies and that the BOP grievance process is not an available remedy as contemplated by Ross v. Blake. The facts on the ground are that Savage, on some occasions, has used the BOP process and has secured relief through it. Your honor, that is true. In 2019, Mr. Savage sought to have an imam added to his SAMs, as well as to engage in a correspondence course. Mr. Savage did that because BOP regulations required that Mr. Savage contact the BOP and make those requests to the BOP. The BOP then transferred those requests to the DOJ, which ultimately made the decision whether to grant or not to grant those requests. But the process produced relief. Well, your honor, the only — It showed pretty conclusively that it's not a SAM process. Well, your honor, I would point — I would disagree with that if you would point to — Mr. Savage has been talking to the DOJ directly, to Mr. Troyer, the AUSA Troyer, for almost a decade. And in 2014, Mr. Savage's counsel had asked Mr. Troyer to make various alterations to his SAMs, including adding his niece and nephew to the SAMs. At that point, Mr. Troyer came back — excuse me, Mr. Fisher asked, okay, the SAMs have been renewed. Should we assume that Mr. Savage's requests have been denied? At that point, Mr. Troyer came back and said, quote, you can assume that the newly enacted SAMs is the department's response to your letter. As you can see, your request to add Savage's niece and nephew to the list of visitors were, in fact, adopted and implemented, while some of your other requests were not, end quote. Now, after that point, Mr. Savage for every year for eight years made the same request to the DOJ, and every year his SAMs were reissued without modification. The — in 2019 — The reissuance has no — reissuance happens independently of any request that you make or don't make. The SAMs are time-limited by their terms, and if DOJ wants them to continue, they have to undergo their own internal process. So the fact of renewal doesn't really tell us anything. Well, Your Honor, the only information that my client had was from AUSA Troyer, who said that if we renew your SAMs, you can consider that a rejection of your request to alternate SAMs. You have one email from 2015, which does seem to blur a little bit. I'll give you that. It's an instance where you're going through the U.S. Attorney's Office to short-circuit the BOP process, and you seem to get something out of that. But that's one time six years ago. We're talking about 2021, and you have more than this email. You have the face of the regulations, which say that the administrative remedy program is available for complaints about the SAMs. Well, Your Honor, I would point — so once Mr. Savage, after eight years of requesting modifications to his SAMs and having his SAMs reissued without modification, Mr. SAMs did engage again in the BOP grievance process in 2021. He filed a grievance, and in that grievance it went to the warden of ADX. The warden, in his response to Mr. Savage, makes it clear. He says, quote, Any such modification must be approved by the U.S. Attorney's Office for the Eastern District of Pennsylvania and the Federal Bureau of Investigation, end quote. Mr. True, the warden, goes on to say, quote, Forwarded to and reviewed by the USAO slash EDPA and the FBI, end quote, and only, quote, These agencies may take action as necessary to grant the relief requested, end quote. He finishes the letter by saying, quote, This response to your request for administrative remedy is for information or purposes only, end quote. Your Honor, I would submit that Mr. Savage attempted to use the BOP process. The warden at ADX Florence told Mr. Savage, we have no power to grant your request. The only power we have is to forge a request to the response, in this case, who will ultimately make a decision on the merits as to your request. Mr. Savage, in that case, Mr. Savage would basically be, the BOP would be transferring the request for relief back to the respondents who had already denied his request by reissuing his SAMs without modification. So that is not an available avenue of relief as contemplated by Ross v. Blake, I believe. Mr. Hicks, we know that there are instances in which the warden of the facility has been able to, not necessarily this particular warden, but in cases in which the warden has been able to accommodate requests within the constraints imposed by the SAMs, that is, minor adjustments in the way things are done in order to provide some relief for the prisoner. Since sometimes the warden can do that, depending on the request, I think we know that the BOP is not entirely relevant in this process. It's not, in other words, simply a transmission belt to the Department of Justice. We also know from Booth, the Booth case, that even though in that particular case there was no material prospect of relief, the court said because the request was for monetary relief and that was not available, the court said that some relief still met the some relief standard, some relief being available. And I can only imagine that is because when some petitions could be handled by BOP, it only makes sense to filter them all through the warden and then on to justice when the warden can't take the required action. So given Booth, I don't understand how you can say that here there was no prospect of relief. Well, Your Honor, I believe that, again, I think that the difference is in the facts here. Two things. Number one, the request that Mr. Savage was making in this case was the addition to additional contacts to his SAMs. It was not to the conditions of his confinement. It was not what? Not to the conditions of his confinement. There was no request that Mr. Savage change the number of phone calls, the number of e-mails or mail, anything else about his conditions of confinement. Rather, he was asking to add additional people to the SAMs. The only – the regulations in this case are clear that the only people who have the power to add additional contacts to Mr. Savage's SAMs are the DOJ, respondents to the DOJ. So in this particular case, also given the fact that the DOJ told Mr. Savage that that was his own – that they were willing to grant him the relief in that avenue and that – Well, look, the only way you can get relief from this Court is from the judges. But you have to file first with the clerk. And the clerk can look at your papers and say they are not appropriate for filing. It can be rejected. And that serves to make the system work reasonably more efficiently than it otherwise would. It seems to me that something like that is going on here. By requiring exhaustion of the ARP, the relief – such relief as can be given at the first level is given, and the rest are passed on to justice. Well, I would set forth, Your Honor, that Mr. Savage has actually exhausted administrative remedies, as was set forth to him by the defendants, the DOJ, that they have reissued his SAMs without modification, and that by doing that, his administrative remedies were exhausted. How can that constitute exhaustion? The fact that you're saying that because he's asked before and has always been denied, that for not asking is sufficient. Well, Your Honor, the – I would say that the DOJ had every opportunity to clarify that the only methodology for which Mr. Savage could seek redress was through the DOP grievance process. It never did so. Instead, it granted his previous request to add contacts by direct contact and told him that any denial going henceforth was a denial of his request. Thank you. We'll give you some rebuttal. Good morning, Your Honors. Janie Lilly for the Federal Government. I'd like to begin by responding to the argument that the Bureau of Prisons has no authority. As Judge Gensler pointed out, the Bureau does have authority to make certain modifications, and it importantly has input about on-the-ground information about both the inmate, perhaps the requested contacts. In the case of an educational institution, might have some information about how that institution has performed under similar restrictions in the past. And so in any event, the Bureau's administrative scheme remained available to Mr. Savage and continues to be available. It's clear in the regulation. That is how we should seek modification of the special administrative measures, and he acknowledged that by filing a request in 2021. Ms. Lilly, if there was a final decision on the merits here, would that be an exception to the exhaustion requirement in the PLRA? If there had been a final decision on the merits of his 20- I think I take that to be one of the arguments that there was a final decision, and so would that be an exception to the exhaustion requirement? Your Honor, if there had been a final decision on the merits in certain circumstances, that could satisfy exhaustion, but there wasn't one here. As Judge Katz has pointed out, there is a single email, but it's unclear, and that illustrates precisely why it was vital for Mr. Savage to go through the Bureau's prescribed process. It was clear on the face of the regulation what he was required to do. It remains available to him here, and that's the way he can receive a final decision on the merits of his requests. It seems very clear on the face of the regs, but there are two odd features in the documents. One is that 2015 email, which I mentioned, where he wants some relief. He goes through EDPA to Enron BOP, and the response he gets back is not, you have to start with BOP. It's that EDPA takes it up to Maine Justice, and the decision on the yearly reauthorization counts as a merits denial of his request. Now, I don't know, maybe the AUSA doesn't have authority to override the whole SAM process, but that tends to support his view of how this can work. Well, Your Honor, the Supreme Court has said in Ross that where there's any ambiguity about the availability of a process or how it works, that the prisoner or the inmate is required to pursue all available remedies, and that's what the district court concluded in this case, that where it's unclear what you should do, of course, we argue that it's not. The regulation is clear on its face, and we know that because he used the same process multiple times, including in the context of seeking additional social contacts. But where there's any lack of clarity, the onus is on the inmate, and that Congress was clear that the inmate should exhaust all available remedies. There's no basis for concluding that the normal process was unavailable to him. He knew that, and even subsequent to the e-mail he points to, availed himself of the process multiple times in this context. Okay. Thank you, Your Honor. Thank you. Thank you. Rebuttal, if you have anything. I do, Your Honor. Just a couple points. First, in terms of the input that the BOP may have in any process, the regulations on the SAMs are clear, that what the DOJ would be looking at to determine whether to add additional members to his SAMs is whether the people he's requesting would be a danger, either a danger of death or serious bodily harm. There's no way for the BOP to be able to make that assessment. If he were to go through the BOP process — You don't think one relevant consideration would be the behavior of the prisoner and the facts on the ground at the prison? Well, Your Honor, the DOJ already knows the behavior of the prisoner. It is incumbent in them, in reissuing the SAMs, to make a determination whether he continues to be a serious risk to death or serious bodily injury. It makes that assessment. It knows about him. And the same issues would come up when — the same issues that would come up on the yearly renewal would come up on a request for modification. Well, Your Honor, that's true, but Mr. Savage went through the process of the yearly renewal by directly contacting Mr. Troyer and then through him, Maine Justice, and that process was successful. And at no point did they ever tell him that it could not be successful. As a matter of fact, they told him the opposite. Let's assume that that gave him a reasonable ground for thinking, that he could bypass BOP again and go directly to justice. Surely it can't be permissible to rely on an informal resolution on a prior matter. And to see that the government is somehow bound by that. I mean, the government moves through official proceedings, and there are any number of cases in which, in this Court and elsewhere, in which people have relied to their detriment on an informal assurance from some government agency. Well, Your Honor, I would say that in this case that the formal proceeding in this case is looking at the renewal of the SAMs itself. So every year the DOJ goes through the process of renewing the SAMs. Supposedly, the basis of the substance of this lawsuit is whether the DOJ actually does the work of looking to Mr. Savage's behavior and deciding whether he is still a danger. And we couldn't even get to that point because it was dismissed for lack of exhaustion. But the point is that every year they go through that process. Every year Mr. Savage has filed a formal letter asking them to please reconsider and to add additional family members, his grandchildren, the mothers of his children to the SAMs. And it has been repeatedly denied by the reissuance of the SAMs without modification. We believe there has been a formal process, and that is a final decision on the merits. I'm not sure why the denial, repeated denials at the level of the Department of Justice, is a reason for being able to not proceed through BOP. And it sounds like it's a reason to not bother going to justice again. Well, Your Honor, I don't believe that's the case. Again, I think that the facts here are particular in that the only ones, if you look at the regulation, the only ones who can add members to Mr. Savage's SAMs are the DOJ. That's true. And I think that if Mr. Savage was asking for additional phone calls or other conditions of confinement where the BOP would have input, important input into whether the decision is made, I think that would be appropriate. But under these facts, it would not be. Did you have an answer to the Booth question before? I'm sorry? Did you have an answer before? I'm not going to recall to the what do you do with the Booth case. Let's see. The prisoner was seeking monetary relief? Oh, yes. Well, Your Honor, in Booth, there was a – there was other – the grievance was not just the monetary remedies. There were also other things that the BOP could do in that case. And my – the argument here is that there's no power that the BOP has in which to modify the SAMs in the way that Mr. Savage has actually requested. In Booth, the BOP had the power to, you know, look at other measures that might be able to fulfill the prisoner's grievance other than monetary remedies. I don't believe that's the case here. Okay. We'll take a look at that again. And one last point, Your Honors. So look at the – how the judge – the – excuse me – the counsel stated that the judge construed the facts here as to be against my client because there is some ambiguity in the letter from Mr. Troyer and that Mr. Savage had a requirement to exhaust all avenues of administrative remedies. We would say that that actually bodes for reversing here rather than upholding in that this is a motion for summary judgment. All facts should have been construed in the light most favorable to Mr. Savage. The judge did not do that. The judge looked at the ambiguity and construed it in favor of the government, which violates the standard for summary judgment, and we believe that is also a reason to reverse. Thank you. Thank you, Your Honors. Thank you. The case is submitted.
judges: Katsas, Rao, Ginsburg